718 F.Supp. 934 (1989)
Apolinar PRIETO, Plaintiff,
v.
METROPOLITAN DADE COUNTY (a Municipal Corporation), and Metro-Dade Police Department (an Agency of Metropolitan Dade County) and Dade County Building and Zoning Department (an Agency of Metropolitan Dade County) and Equity Properties Development Companies d/b/a the 163rd Street Shopping Mall, individually, jointly and severally, Defendants.
No. 87-0249-CIV.
United States District Court, S.D. Florida.
August 29, 1989.
*935 Frank Quintero, Miami, Fla., for plaintiff.
Robert Davies, Asst. County Atty., Miami, Fla., for defendants.

MEMORANDUM OPINION
ARONOVITZ, District Judge.
This cause is now before the court on defendant Metropolitan Dade County's motion for a directed verdict.[1] For the reasons that follow, the motion is due to be granted.

FACTS
Taking the evidence in the light most favorable to plaintiff Apolinar Prieto, he operates a lunch wagon in Metropolitan Dade County. For a number of years prior to February 4, 1986, Prieto would park his lunch wagon by or near the 163rd Street Shopping Mall ("the Mall") in unincorporated Dade County for approximately 45 minutes every weekday morning and make sales to customers. On numerous occasions prior to February 4, 1986, Prieto was *936 warned by both Metropolitan Dade County police officers and Mall security personnel that his actions were illegal. Finally, on both February 4 and 5, 1986, Detective Helen Patterson issued Prieto a citation for being in violation of s. 33-8(a), Code of Metropolitan Dade County. S. 33-8(a) provides:
(a) No structure shall be used or occupied or any existing use enlarged, or any new use made of any land, body of water, or structure, without first obtaining a certificate of use and occupancy therefor from the building and zoning department.
While, Prieto was never issued a citation for violation of s. 33-8 after February 5, 1986, there were several incidents after that time when police officers spoke to Prieto about his being in violation of either s. 33-8 or other ordinances. On April 11, 1988, Prieto was arrested for not having license numbers printed on both sides of his lunch wagon in violation of s. 8A-276, Code of Metropolitan Dade County, and on May 25, 1988, he was issued a citation for parking his lunch wagon within 500 feet of a school in violation of s. 21-27.1, Code of Metropolitan Dade County. The 1988 arrest and citation involved two different Metropolitan Dade County police officers and there was no evidence that either one of them had knowledge of the 1986 citations or of each other's actions.

LAW
Prieto contends that s. 33-8 is unconstitutional and he has sued for an injunction enjoining enforcement of s. 33-8.[2] He also contends that the above discussed actions of the police officers violated his constitutional rights, and he has sued Metropolitan Dade County under 42 U.S.C. § 1983.

I. S. 33-8 is Constitutional

Counsel for Prieto admitted that s. 33-8 was constitutional when Metropolitan Dade County's motion for directed verdict was argued before the court. However, for the sake of comprehensiveness, the court notes that a review of the applicable law in the area establishes that s. 33-8 is constitutional.
By his complaint, Prieto based his challenge to s. 33-8 solely on the Due Process clause. However, regardless of whether a court is employing a due process or equal protection analysis of social and economic welfare legislation, it must use the same standard of review. Nowak, Rotunda & Young on Constitutional Law, s. 11.4 (3d Ed.1986). The court is obligated to uphold s. 33-8 if it is rationally related to a legitimate government interest. Minnesota v. Clover Leaf Creamery Company, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981); Nowak, Rotunda & Young, supra. While "there was a time when the Due Process Clause was used ... to strike down laws that were thought unreasonable, that is unwise or incompatible with some particular economic or social philosophy," it is now well established that in reviewing economic and social legislation "courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." Ferguson v. Skrupa, 372 U.S. 726, 729-30, 83 S.Ct. 1028, 1030-31, 10 L.Ed.2d 93 (1963). S. 33-8 must be presumed constitutional, and the burden is on Prieto to "establish that the legislature has acted in an arbitrary and irrational way." Duke Power Company v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 83, 98 S.Ct. 2620, 2636, 57 L.Ed.2d 595 (1978). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); accord Clover Leaf Creamery Company, supra.
*937 The evidence before the court clearly establishes that s. 33-8 is rationally related to a legitimate government interest. The evidence showed that the ordinance does not make it illegal for a mobile food vendor to drive around and make sales when he or she is flagged down. The ordinance does prohibit coming onto property, parking, setting up and then making sales to customers. S. 33-8 ensures that vendors, including lunch wagon operators, do not go onto property without permission and set up a stand from which they do business. Moreover, s. 33-8 ensures an organized pattern of land use and that a structure is not put to a use which is inconsistent with how other structures in the immediate vicinity are used. In sum, s. 33-8 protects the rights of property owners and promotes legitimate zoning concerns. S. 33-8 is constitutional. See City of New Orleans v. Dukes, 427 U.S. 297, 304-06, 96 S.Ct. 2513, 2517-18, 49 L.Ed.2d 511 (1976) (per curiam); Vaden v. Village of Maywood, Illinois, 809 F.2d 361 (7th Cir.), cert. denied, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987); Service Employees International Union, Local v. District of Columbia Government, 608 F.Supp. 1434 (D.D.C.1985); John v. State, 577 S.W.2d 483 (Tex.Ct.Crim.App.1979); Commonwealth v. Gulden, 369 Mass. 965, 341 N.E.2d 262 (1976); Good Humor Corporation v. Village of Mundelein, 33 Ill.2d 252, 211 N.E.2d 269 (1965) (all upholding laws regulating street vendors).
Furthermore, even if Prieto had attempted to raise an equal protection challenge on a basis other than social and economic welfare legislation grounds it would be without merit. It is well established that "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage, [the Supreme Court's] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." Dukes, 427 U.S. at 303, 96 S.Ct. at 2516-17; accord Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). The classifications involved in the challenged part of the code are not based on race, religion or alienage, nor do they involve the infringement of a fundamental right. See Dukes, 427 U.S. at 303-04, 96 S.Ct. at 2516-17; Harper v. Lindsay, 616 F.2d 849, 854 (5th Cir.1980) (both holding that the right to pursue a business is not a fundamental right for the purposes of equal protection analysis).
Finally on the constitutionality issue, the court holds that to the extent Prieto's complaint can be read as challenging s. 33-8 on vagueness grounds, such a challenge is without merit. In order to survive a constitutional challenge based on vagueness grounds the statute need only provide "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972); United States v. Marino-Garcia, 679 F.2d 1373, 1383 (11th Cir.1982), cert. denied sub. nom, Pauth-Arzuza v. United States, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983); United States v. Barnett, 587 F.2d 252, 256 (5th Cir.), cert. denied sub. nom, Hicks v. United States, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); Ransom v. Wainwright, 553 F.2d 900, 901 (5th Cir.), cert. denied, 434 U.S. 868, 98 S.Ct. 206, 54 L.Ed.2d 145 (1977). "[S]training to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the `void for vagueness' doctrine, and [the court should] not indulge in it." United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975). Also, the fact that the legislature might have been able to word the statute in a clearer fashion will not render the law unconstitutional. Powell, 423 U.S. at 93, 96 S.Ct. at 320; Marino-Garcia, 679 F.2d at 1383.
This court can uphold the vagueness challenge made by the plaintiff only if s. 33-8 is impermissibly vague in all of its applications. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 *938 L.Ed.2d 362 (1982). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Id.; accord Powell, 423 U.S. at 92, 96 S.Ct. at 320; United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (both holding that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand).
S. 33-8 clearly states that no new use of land can be made without first obtaining a certificate of use and occupancy. Moreover, Prieto was warned numerous times before he was arrested that his actions were illegal. The law is so clear that the court fails to see how one could even strain and inject doubt as to the meaning of the words in s. 33-8 or hypothesize about some abstract situation where s. 33-8 might be vague, but even if that is possible, as the above law shows, that would still be insufficient to establish that s. 33-8 is unconstitutional. S. 33-8 is not unconstitutionally vague.

II. Metropolitan Dade County is not Liable under s. 1983

Prieto contends that the actions of the police officers violated his constitutional rights. While Metropolitan Dade County contends that the actions of its police officers did not violate any of Prieto's constitutional rights, the court need not reach this issue because even assuming otherwise Metropolitan Dade County is entitled to a directed verdict because no reasonable fact-finder could find that Prieto's constitutional rights were violated pursuant to a policy or custom of the County.
It is well established that in this a s. 1983 action the County "cannot be held liable by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986); accord Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, the County can be held liable in this case only if Prieto's alleged injury was inflicted pursuant to the "policy or custom" of the County. Monell, 436 U.S. at 694, 98 S.Ct. at 2037; see also Gilmere v. City of Atlanta, 774 F.2d 1495, 1503-04 (11th Cir.1985) (en banc), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 1993, 90 L.Ed.2d 654 (1986).
"To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Marys Georgia, 787 F.2d 1496, 1499 (11th Cir.1986). In other words, a governing body can only be held liable for official policies or for customs that are "so permanent and well settled" as to have the "force of law." Monell, 436 U.S. at 691, 98 S.Ct. at 2036; Brown v. City of Clewiston, 848 F.2d 1534, 1538 (11th Cir.1988); Gilmere, 774 F.2d at 1504. Furthermore, to find liability under s. 1983 the custom or policy must be the moving force of the constitutional violation at issue." Samples on Behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1333 (11th Cir.1988). Plus, even if a custom or policy exists, to prevail on a s. 1983 claim Prieto must show that there is a causal link between the custom or policy and the deprivation. Parker v. Williams, 862 F.2d 1471, 1477 (11th Cir. 1989); Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir.1985).
S. 33-8 is the policy of Metropolitan Dade County. The only evidence regarding arrests and citations of lunch wagons before the court is the evidence regarding Prieto's three citations and one arrest which occurred over a two year period. There is no evidence that anyone in a policy making position was ever informed of Prieto's citations and arrest. Moreover, even if there had been such evidence, these four isolated incidents involving only Prieto fall well short of proving a persistent and widespread practice sufficient to establish a policy *939 or custom.[3] Finally, even if there was evidence of a policy or custom, Prieto has offered absolutely no evidence that it caused the alleged constitutional deprivation in this case.
In sum, s. 33-8 is constitutional, and even assuming there was sufficient evidence to establish that the acts of one or more of the police officers violated Prieto's constitutional rights Metropolitan Dade County is entitled to a directed verdict because there is no evidence the acts were carried out pursuant to a policy or custom of Metropolitan Dade County.
An appropriate judgment will be entered.
NOTES
[1] Plaintiff Apolinar Prieto has sued Metropolitan Dade County, Metro-Dade Police Department, Dade County Building and Zoning Department, and Equity Properties Development Companies. Metro-Dade Police Department and Dade County Building and Zoning Department are divisions of Metropolitan Dade County and are not sui juris and subject to suit. Thus, the only actual defendants are Metropolitan Dade County and Equity Properties Development Companies. The portion of this lawsuit brought against Equity Properties Development Companies has been disposed of previously. The only matters left at issue are counts II and III which are brought against Metropolitan Dade County.
[2] Prieto has also challenged ss. 33-14 and 33-243, Code of Metropolitan Dade County. However, he was never cited or arrested pursuant to either of these ordinances, and he does not have standing to challenge their constitutionality. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); Saladin v. City of Milledgeville, 812 F.2d 687 (11th Cir.1987).
[3] As well as relying on the above cited case law, the court, as it did in its oral ruling on Metropolitan Dade County's motion for directed verdict, notes the applicability of Martinez v. City of Miami, 796 F.2d 1477 (11th Cir.1986) (per curiam) (unpublished). In Martinez the Eleventh Circuit Court of Appeal reversed this court's submitting a case similar to the one now before it to the jury. In both this case and Martinez there is only evidence of isolated acts of some police officers and there is no showing sufficient to establish a policy or custom.