ALTENBERND, Judge,
Concurring.
This panel is bound by this court’s decision in Hobby v. State, 761 So.2d 1234 (Fla. 2d DCA 2000). If that were not the case, I would hold that a statute that reclassifies a controlled substance offense from a second-degree felony to a first-degree felony merely because the offense occurred “within 1000 feet of a physical place for worship at which a church or religious organization regularly conducts religious services” is unconstitutional. See § 893.13(l)(e), Fla. Stat. (1997). I would do so for several reasons.
First, the undefined “physical place of worship” is even more ambiguous than the phrase “public housing facility,” which the supreme court determined to be unconstitutionally vague within the same drug statute in Brown v. State, 629 So.2d 841 (Fla.1994). Does physical place of worship include (1) shopping malls that regularly allow worship services, (2) homes where prayer groups meet on a weekly basis, or (3) physical locations where groups conduct services for homeless people? I really do not know. There are store-front churches of all varieties in some of our communities. The First Amendment permits such meetings to occur without recorded public notice or license. An individual in most communities cannot reasonably be called upon to know whether he or she is located within 1000 feet of something described as a “physical place of worship.” In short, I cannot distinguish this case from Brown.
Second, even if this phrase can be adequately defined, I question whether there *1227 is any rational basis to support the legislative use of this police power. I accept that the legislature can protect children at child care centers and schools from the temptation of using drugs, the risks of becoming drug dealers, and the violence associated with drugs. See State v. Burch, 545 So.2d 279, 281, 284 (Fla. 4th DCA 1989), approved, 558 So.2d 1 (Fla.1990); State v. Regan, 564 So.2d 1208, 1209-10 (Fla. 2d DCA 1990). I accept that a carefully defined category of convenience stores may rationally be protected by a perimeter that reclassifies a drug offense because their parking lots, telephones, and flow of nighttime customers have become favorite sites for the sale of drugs.
I know of no one who believes that religious people are more likely to be tempted to use or sell drugs. This statute protects churches twenty-four hours a day. Can the legislature rationally decide that families attending church are entitled to or need greater protection from drugs than families who go to Wal-Mart on Sunday morning or the movie theater on Friday night?
It seems obvious to me that this statute is designed to protect the religious sensibilities of those people who choose to attend churches with physical edifices. As a society, I believe we should value these religious institutions, but I do not believe the State has the power under our constitution to single out people of faith, as a special class, and give them this sort of extra protection.
Finally, as in Brown, I am very concerned that this statute allows for selective enforcement. Police and prosecutors decide whether they wish to add the “1000 feet” element to the offense to enhance the penalty. As explained in Brown, such statutes inevitably tempt law enforcement to treat poor people and minorities differently than the rest of society.
Although this statute must be lucrative for surveyors, if the legislature actually wants to protect citizens from drugs “in proximity to places where people gather,” Rice v. State, 754 So.2d 881, 883 (Fla. 5th DCA 2000), it seems to me that it cannot single out churches and exclude bars, shopping malls, and fast food restaurants. In the end, if the legislature wants to reclassify the offense to protect the general population, it seems that it would be easier to select the boundaries of a municipality in most situations.